

**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

March 4, 2020

**BY ECF**

The Honorable Edgardo Ramos
United States District Judge
Southern District of New York
40 Foley Square
New York, New York 10007

    Re:    <u>United States v. Doran Santiago Ramos</u>, 20 Cr. 4 (ER)

Dear Judge Ramos:

    A status conference is scheduled in the above-captioned case for this afternoon, March 4, 2020, at 3:30 p.m. On January 24, 2020, the Court held an initial conference at which, among other things, the Government requested that the Court modify the defendant's conditions of release. On January 31, 2020, defense counsel submitted a letter, under seal, concerning the Government's proposed modifications. Based on further investigation and receipt of additional evidence, the Government submits that the defendant has violated the conditions of his release, and now moves for the Court to issue an arrest warrant and schedule a hearing and enter an order of revocation and detention pursuant to 18 U.S.C. § 3148.[1]

---

[1] I apologize for the delay in submitting this response to the defense letter. Since the January 24 initial conference, the Government has received a significant volume of documents from witnesses and victims in this case, which the Government has sought to review and produce to the defense as expeditiously as possible. The Government submits that the conclusive nature of the evidence described below supports revocation and remand at today's conference. However, if the Court schedules a revocation hearing for a later date, the Government respectfully requests that the previously sought bail modifications be imposed in the interim, specifically:

1. That the defendant continue or seek verifiable employment (by which the Government intended that the defendant obtain employment other than the defendant's operation of the fraudulent business that is the subject of this case);
2. That the defendant have no contact outside the presence of counsel with victims or witnesses, including all investors and creditors, and all current or former employees of NYLA or related entities; and
3. That the defendant make no solicitation of investments or loans for NYLA, related entities, or any business involved in the manufacture, production, distribution, or sale of liquor.

Background

By Complaint and Arrest Warrant dated October 30, 2019, the defendant was charged with wire fraud, in violation of 18 U.S.C. §§ 1343 and 2. On November 3, 2019, the defendant was arrested in Atlanta, Georgia, and was released on bond. On November 12, 2019, the defendant appeared in the Southern District of New York, was presented before Magistrate Judge Katharine H. Parker, and was ordered released on bond. Among the conditions of release were that the defendant not violate federal, state, or local law while on release, and that the defendant not have contact with victims or witnesses outside the presence of counsel. Dkt. 5.

The Complaint alleges that the defendant fraudulently induced investments and loans in a purported tequila manufacturing company. Company-1 in the Complaint refers to corporate entities operating under the brand "NYLA." Among other things, the Complaint alleges that the defendant induced investments in and loans to NYLA by providing investors with, among other things, altered bank statements showing millions of dollars in transactions with NYLA's purported manufacturing and sales counterparts that did not in fact occur. Although the Complaint focuses principally on the defendant's conduct defrauding one particular investor, the Government's investigation has identified at least 15 confirmed victims (investors and creditors to NYLA) with losses exceeding $2 million. In his post-arrest interview, Ramos acknowledged only six investors (and falsely stated that there were no others), and one individual who made a loan.

Discussion

Revocation of the defendant's bond and remand is warranted because, while on pretrial release, the defendant has violated his conditions of release in two significant ways. First, the defendant has sought to defraud additional individuals by perpetuating the same fraudulent scheme involving NYLA, which violates the condition that the defendant not commit any crimes while on pretrial release. Second, the defendant has violated the condition that he refrain from contacting victims and witnesses outside the presence of counsel by, among other things, contacting prior investors whom he already defrauded. The Government respectfully submits that there is no combination of conditions that will assure the economic safety of other persons and the community, and that the defendant is unlikely to abide by any conditions the Court may impose.[2]

---

[2] Title 18, United States Code, Section 3148(b) provides, in relevant part:

> The [Court] shall enter an order of revocation and detention if, after a hearing, the [Court] (1) finds that there is—(A) probable cause to believe that the person has committed a Federal, State, or local crime while on release; or (B) clear and convincing evidence that the person has violated any other condition of release; and (2) finds that—(A) based on the factors set forth in section 3142(g) of this title, there is no condition or combination of conditions of release that will assure that the person will not flee or pose a danger to the safety of any other person or the community; or (B) the person is unlikely to abide by any condition or combination of conditions of release.

Section 3148(c) further provides that upon finding probable cause that the defendant committed a federal felony (e.g., wire fraud), there is a rebuttable presumption "that no condition or

First, following his arrest and continuing after the initial conference before Your Honor, the defendant has continued to perpetuate his wire fraud scheme by soliciting investments and loans for NYLA business activities, and seeking a buyer for the company, based on demonstrable falsehoods and misrepresentations.

As one example, beginning on November 9, 2019 and continuing through at least January 29, 2020, Ramos, both personally and acting through an associate, has taken affirmative steps to solicit investments and/or loans to NYLA from a prospective investor ("Prospective Investor-1"), who led an investment group. The below is a partial timeline of events, the fraudulent nature of which will be explained immediately after:

- November 9, 2019 – An association of Ramos ("Associate-1") texted Prospective Investor-1 to set up a meeting regarding NYLA tequila with Associate-1 and "Santiago the CEO."
- November 13, 2019 – Ramos and Associate-1 met in person with Prospective Investor-1 and prospective investors brought in by Prospective Investor-1.
- December 3, 2019 – Associate-1 texted a letter of intent (dated November 28, 2019) to Prospective Investor-1, which was provided to Associate-1 by Ramos. The letter states that "Your $350,000 investment is key to the next phase of growth of the NYLA Brand, allowing us to fulfil part of our standing shipment orders." The letter has Ramos (Founder & CEO) and Associate-1 (President) listed as the signatories.
- December 7, 2019 – Ramos emailed Prospective Investor-1 a Powerpoint presentation titled "Investment Deck"; the presentation itself is dated December 2019.
- December 19, 2019 – In a joint text chat with Associate-1 and Prospective Investor-1, Ramos offered Prospective Investor-1 equity (which Associate-1 had previously indicated would be 2% equity), a 10% commission, and board member seats in exchange for investment in NYLA (the amount is not specified).
- January 16, 2020 – In a text message with Prospective Investor-1, Ramos increased his offer to 10% equity "on top the commission" and board member positions.
- January 22, 2020 – In a text message with Prospective Investor-1, Ramos asks if Prospective Investor-1 knows someone who can invest a "small amount" because "I have until Monday to give them 70,000 so get more out," which appears to mean that Ramos needs $70,000 by Monday to pay to ship more tequila out. Ramos continued, "Because we still needs to raise the 410-500 this 70 would be subtracted from the total," which appears to mean that Ramos is attempting to raise $410,000 to $500,000.
- January 23, 2020 – Associate-1 texted Prospective Investor-1 that "we're moving forward with filing taxes as I was able to secure the funds." Ramos and Associate-1 had previously discussed with Prospective Investor-1 that NYLA needed to file two years of tax returns in order to secure a loan. Ramos and Associate-1 had also

---

combination of conditions will assure that the person will not pose a danger to the safety of any other person or the community."

- previously indicated that they needed to raise money to pay the tax preparers to prepare the tax documents.
- January 29, 2020 – Ramos texted Prospective Investor-1 that "the check just clears for the tax guys he has everything and is working on this now." Prospective Investor-1 indicates that his investors are no longer interested.

As the timeline makes clear, throughout the period following his arrest, and after the imposition of the conditions of supervised release discussed above, Ramos directly sought between $70,000 and $350,000 from Prospective Investor-1. That solicitation was based in significant part on the letter of intent and investment deck that Ramos provided to Prospective Investor-1. Both documents contained verifiable falsehoods.

With respect to the letter of intent, as described above, the letter indicated that Ramos was seeking $350,000 to fulfil open orders. The letter contained a chart titled "Breakdown of Open Orders." Within the chart, among other things, were two lines specifying a customer of "Matthew Clark (to UK") and "Malt by Master (to UK)(Distr under M Clark)". The chart indicated that for these customers, there was a combined order of 72,570 bottles, 16,252 or which were fulfilled, and the orders were worth a combined $2,827,445. On or about February 13, 2020, U.S. Postal Inspector Dan Gabel, the case agent in this matter, received an email from representatives of Master of Malt, a UK based liquor-distribution company,[3] which confirmed that Master of Malt has "not had contact or come across anyone by the name NYLA (and various similar company names) and Doran Santiago Ramos."[4]

The investment deck is similar. The last slide contains a letter, similar to the letter of intent described above, which seeks an investment of $350,000, which will be used to "ship out 6MM of Product." Earlier in the deck, there is the same chart of "Breakdown of Open Orders" described above, as well as a Profit and Loss chart for "January May 2019." The Profit and Loss Chart indicates, among other things, that between January and May 2019, NYLA had a total of $4,957,205.20 in revenue, yielding a profit of $3,149,082.90. Bank records for Ramos and NYLA (obtained both prior to and following the Complaint) completely belie the notion that NYLA had anywhere near such significant revenues or profits. Moreover, in Ramos's post-arrest interview on November 3, 2019, however, Ramos admitted that NYLA had never made any money.

Thus, in the period following Ramos's presentment in this District, Ramos violated the condition that he not commit any federal crimes by attempting to commit wire fraud against additional victims using the NYLA tequila fraud scheme.

---

[3] *See* https://www.masterofmalt.com/.

[4] In the course of its investigation, the Government received from a pre-existing investor, ("Investor-2," identified as Investor-2 to distinguish this investor and the others described herein from Investor-1 referenced in the Complaint) purported invoices matching the bottle quantities listed in the Breakdown of Open Orders contained in the letter of intent. The invoices purport to be for "Malt by Masters" and contains an address that (but for a typo) matches the address of the actual company, Masters of Malt. The actual company Masters of Malt was shown these invoices and confirmed that they were fraudulent.

Second, the defendant has violated the condition of release that he not communicate with victims and witnesses outside the presence of counsel. Ramos's violation of this condition has included communicating with victims as part of an effort to interfere with law enforcement's ongoing investigation. As one example, on December 2, 2019, Ramos spoke by phone with a pre-existing investor ("Investor-3"), which call was consensually recorded. During the call, in substance and in part, Ramos conveyed to Investor-3 that Ramos's lawyer told Ramos, "We have a really good case here. This isn't a case of fraud, . . . . This is more of a case of neglect and there's nothing illegal about that." Ramos also told Investor-3 that Ramos spoke with the lawyer about a potential buyout of NYLA by Investor-2. Later in the call, Ramos and Investor-3 discussed Ramos's request that Investor-3 enter into a non-disclosure agreement ("NDA") with NYLA.[5] When Investor-3 resisted signing the agreement, Ramos explained, in substance and in part, that his lawyer told Ramos that he needed the NDA "because of the case." Investor-3 asked Ramos to give Investor-3 credit because Investor-3, to that point, had not spoken with (Postal Inspector) Dan Gabel. Ramos responded, "I'm giving you credit." Ramos explained that he had already received NDAs from other investors, and explained that the NDA means that Investor-3 could not "openly give out information." Ramos specifically mentioned that they needed to keep "contracts" and "statements" "in house at NYLA."

Ramos's conversation with Investor-3 is an egregious violation of his conditions of release. Ramos is required by his conditions not to speak with victims or witnesses outside the presence of his lawyer, and yet, in this communication, Ramos is making representations about his lawyer's advice regarding both his criminal case and the conduct of NYLA business. Moreover, Ramos purports to rely on his lawyer's advice to obtain an NDA from Investor-3 to prevent Investor-3 from sharing "contracts" and "statements." As the Court (and Ramos) knows from the Complaint, the discrepancies between the contracts (such as purchase orders) and bank statements compared with the actual purchase orders (if they existed) and actual bank statements is a fundamental (and unavoidably damning) part of the Government's proof against Ramos. Ramos's efforts to hinder victims from sharing information and explicitly discussing victims' avoiding communicating with law enforcement agents (which in fact had the effect of delaying victims from coming forward), is a serious breach of the defendant's supervised release conditions (and may itself constitute another violation of federal law, *see* 18 U.S.C. § 1512(b)).

## Conclusion

The Government submits that this conduct establishes probable cause that the defendant has continued to commit at least one federal felony perpetuating the charged wire fraud scheme against additional victims, and has violated the requirement that he refrain from speaking with victims and witnesses outside the presence of counsel. The Government submits that the defendant's pattern of behavior shows a complete disregard for the defendant's conditions of release such that the defendant would be unlikely to abide any combination of conditions of release.

---

[5] Ramos, in fact, had obtained an NDA from Prospective Investor-1.

In light of the overwhelming evidence of the defendant's ongoing felonious conduct and violations of his conditions of release, the Government respectfully requests that the Court hold a hearing and enter an order of revocation and detention.

>                    Respectfully submitted,
>
>                    GEOFFREY S. BERMAN
>                    United States Attorney
>
> By: _____
>                    Brett M. Kalikow
>                    Assistant United States Attorney
>                    (212) 637-2220

Cc: Zawadi S. Baharanyi, Esq. (via ECF)
    U.S. Postal Inspector Daniel Gabel (via Email)
    U.S. Pretrial Services Officer Dominique Jackson (via Email)